UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RICHARD S. DAILEY,            )
                              )
        Plaintiff,             )     Case No. 1:08-cv-308
                              )
v.                            )      Honorable Janet T. Neff
                              )
COMMISSIONER OF               )
SOCIAL SECURITY,              )
                              )      **REPORT AND RECOMMENDATION**
        Defendant.             )
_____)

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB) or supplemental security income (SSI) benefits. On March 27, 2006, plaintiff filed his applications for benefits. Plaintiff initially claimed a July 14, 2005 onset of disability, but later amended his alleged onset date to March 26, 2006, the date he last worked. (A.R. 75, 167, 326-27). Plaintiff's claims were denied on initial review. (A.R. 24-28, 179-84). On August 14, 2007, plaintiff received a hearing before an administrative law judge (ALJ) at which he was represented by counsel. (A.R. 321-87). On September 17, 2007, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 14-23). On February 12, 2008, the Appeals Council denied review (A.R. 3-5), and the ALJ's decision became the Commissioner's final decision.

On April 2, 2008, plaintiff filed his complaint seeking judicial review of the Commissioner's decision denying his claims for DIB and SSI benefits. Plaintiff's attorney filed a five-page brief rasing two issues:

> I. THE ADMINISTRATIVE LAW JUDGE IGNORED SUBSTANTIAL EVIDENCE REGARDING THE CLAIMANT'S RECURRENT MAJOR DEPRESSION AND FAILED TO ADDRESS HOW SUCH MENTAL IMPAIRMENTS WOULD IMPACT ON EMPLOYABILITY.
>
> II. THE ADMINISTRATIVE LAW JUDGE FAILED TO GIVE CONTROLLING WEIGHT TO THE OPINIONS OF THE CLAIMANT'S PRIMARY TREATING SOURCE.

(Statement of Errors, Plaintiff's Brief at 2, docket # 8). Upon review, I find that the ALJ did not comply with the procedural requirement of providing "good reasons" for the weight he gave to the opinion of plaintiff's treating physician regarding plaintiff's functional limitations. I recommend that the Commissioner's decision be vacated and that the matter be remanded to the Commissioner for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the

evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from his alleged onset of disability of March 26, 2006, through the date of the ALJ's decision. (A.R. 16). Plaintiff had not engaged in substantial gainful activity since his alleged onset

of disability. (A.R. 16). The ALJ found that plaintiff had the following severe impairments: "ischemic optic neuritis, diabetes mellitus, hypertension, and osteomellitus." (A.R. 16).

The ALJ found that plaintiff's depression did not constitute a severe impairment:

> The claimant was found to have depression by a Dr. Tava, a DDS examiner, on June 13, 2006. Affect seemed rather anxious, but also depressed. The claimant reported being on Xanax but indicated that he was not involved in any type of professional counseling services. The claimant reported getting along reasonably well with other people and interacted appropriately with the psychologist. The claimant reported taking care of most all of the typical household chores since his wife suffered from emphysema (Exhibit 7F). The claimant indicated that his depression was not that bad and more situational than medical. Accordingly, the undersigned finds depression not to be a severe impairment.

(A.R. 17).

The ALJ found that plaintiff "did not have an impairment or combination of impairments" which met or equaled the requirements of the listing of impairments. (A.R. 17). The following notation is found in the section of the opinion where the ALJ's explanation of this conclusion would normally appear: "**EXPLAIN WHY NO LISTING MET OR EQUALED**." Plaintiff's mental impairment is discussed elsewhere in the ALJ's opinion:

> In evaluating a mental impairment, the undersigned must use the specific analysis set forth in 20 C.F.R. § 404.1520(a) and referred to as the 'technique." This is a two-part analysis based on Section 12.00 of Appendix I, Subpart P. Regulations No. 4. The pertinent symptoms, signs and laboratory findings must be considered in order to reach a conclusion that a mental impairment is medically determinable. Once a mental impairment is established, the severity of the impairment is measured by assessing the functional limitations using the four criteria in paragraph B of the appropriate listing. These criteria include activities of daily living, social functioning, concentration, persistence of pace and episodes of decompensation each of extended duration. Herein, the Administrative law Judge finds the claimant has been diagnosed with depression, attended by signs and symptoms characteristic of the disorder found in Section[] 12.04 for affective disorders of the Listing of Impairments, Appendix 1, subpart P, Regulations No. 4.

> In determining what functional limitations the claimant has as a result of this condition, the requirements of part B of Sections 12.04, and of part C if applicable[,] must be considered. As a result of this impairment, the claimant has a mild restriction in activities of daily living.

> He lives with his wife who has emphysema and [he] does most of the household chores. There are only mild difficulties in maintaining social functioning. The claimant reported getting along well with his family and friends. Additionally, there is no evidence that he had any problem interacting with physicians or disability examiners. There are mild difficulties in maintaining concentration, persistence or pace. The claimant reported that he spends most of his time watching television and enjoyed watching the [H]istory and [D]iscovery channels. He also reported that he enjoyed playing trivia, euchre, cribbage an board games, all of which require some degree of concentration (Exhibit 16E) [A.R. 173-78]. There have been no episodes of decompensation. The evidence does not establish the presence of the "C" criteria for purposes of Listing 12.04.

(A.R. 17). The ALJ determined that plaintiff's subjective complaints were not fully credible. (A.R. 21). He found that plaintiff retained the residual functional capacity (RFC) for work at the medium exertional level:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry no more than 50 pounds occasionally or 25 pounds frequently. He is unable to climb ladders, ropes, or scaffolds and unable to perform visual tasks that require precise depth perception. He is unable to walk on uneven terrain and is unable to drive commercial vehicles. He should avoid moving machinery, moving vehicles and unprotected heights.

(A.R. 17). Plaintiff was unable to perform his past relevant work. Plaintiff was fifty-six years old as of the date of his alleged onset of disability and fifty-eight years old on the date of the ALJ's decision. Thus, at all times relevant to his claims plaintiff was classified as an individual of advanced age. ALJ found that plaintiff has a limited education (9th grade) and is able to communicate in English. (A.R. 22). The ALJ stated: "Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled' whether or not the claimant has transferable job skills." (A.R. 22). The hearing transcript shows that the ALJ was well aware that, given plaintiff's age, if he found that plaintiff retained the RFC for anything less than work at the medium exertional level, the Medical-Vocational Guidelines would indicate that a finding of disability was appropriate.

(A.R. 384). In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were 7000 production assembly worker, 1200 inspector/sorter, and 3,200 hand packager jobs in the State of Michigan that the hypothetical person would be capable of performing. (A.R. 384-85). The ALJ held that this constituted a significant number of jobs. Using Rule 203.12 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (A.R. 14-23).

**1.**

Plaintiff argues that the ALJ "ignored substantial evidence regarding the claimant's recurrent major depression and failed to address how such mental impairment[] would impact on employability." (Plf. Brief at 3). Plaintiff states, "The only explanation proffered for not finding that Mr. Dailey's depression did not constitute a severe impairment was the Administrative Law Judge's observation that 'the Claimant indicated that his depression was not that bad and that it was more situational than medical.'" (Plf. Brief at 3) (quoting A.R. 17). At Step 2 of the sequential analysis that ALJ found that plaintiff had severe impairments of "ischemic optic neuritis, diabetes mellitus, hypertension and osteomellitus." (A.R. 16). To the extent that plaintiff is arguing that the ALJ's decision should be overturned because the ALJ failed to find an additional severe impairment at Step 2, his argument is patently meritless. The failure to find additional severe impairments is "legally irrelevant." *McGlothin v. Commissioner*, 299 F. App'x 516, 522 (6th Cir. 2008); *see Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008); *Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Further, plaintiff testified that his mental health was not a problem and that it would not be an impediment to his ability to work. (A.R. 346). He testified that his

"depression" came from bills coming in and not having enough money to pay them. (A.R. 350, 352, 358-59). Plaintiff's initial argument does not provide a basis for disturbing the Commissioner's decision.

**2.**

Plaintiff argues that the ALJ committed error when he failed to give "controlling weight" to the opinion of plaintiff's treating physician, Raymond Tracy, D.O. (Plf. Brief at 4-5). Upon review, I do not find that the ALJ erred when he failed to give controlling weight to the opinions of plaintiff's treating physician. I do find that the ALJ failed to comply with the procedural requirement of providing "good reasons" for the weight he gave to Dr. Tracy's opinions.

On December 5, 2006, Dr. Tracy completed an assessment of plaintiff's ability to do work related activities. He indicated that plaintiff was blind in his left eye, had difficulty hearing, had extensive arthritis and would have difficulty performing any strenuous activity. (A.R. 266). He stated that plaintiff could occasionally lift and carry twenty pounds and frequently carry up to ten pounds. (A.R. 263). He stated that plaintiff could sit two-to-three hours, stand one-to-two hours, and walk for thirty minutes in an eight-hour workday. (A.R. 263). Plaintiff could occasionally reach above shoulder level stoop and climb ramps and stairs. (A.R. 264). Plaintiff should never squat, kneel, climb ladders, ropes or scaffolds, crouch or crawl. (A.R. 264). He indicated that plaintiff should never work at unprotected heights or near dangerous moving machinery. Plaintiff could not perform work where he would be exposed to temperature extremes, humidity or wetness, pulmonary irritants, vibration, or noise. (A.R. 265).

The ALJ found that Dr. Tracy's opinions were not entitled to controlling weight:

> Dr. Raymond Tracy indicated in a medical provider's assessment dated December 5, 2006 that the claimant was able to sit two to three hours out of an eight hour workday, stand one to two hours out of an eight-hour workday, and walk 30 minutes out of an eight-hour workday. He found that the claimant would be able to lift up to 20 pounds occasionally (Exhibit 16F) [A.R. 263-68]. If a treating source's opinion is well-supported and not consistent with the other substantial evidence in the record, it must be given controlling weight. However, controlling weight may not be given to a treating source's medical opinion unless the opinion is well supported by medically acceptable clinical and laboratory techniques, and is not inconsistent with the other substantial evidence in the record (20 CFR 404.1527(d)(2) and 416.927(d)(2) and SSR 96-2p).
>
> A finding that a treating source's medical opinion is not entitled to controlling weight under the above criteria does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator (SSR 96-2p). In deciding whether or not to adopt the treating source's opinion in this situation, the following factors are to be considered along with any other appropriate factors; the examining relationship, the treatment relationship in terms of its frequency and duration, supportability, consistency, and specialization. Particular attention is to be given to the consistency
>
> The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such note in order to satisfy their patient[']s requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the evidence of record, as in the current case.
>
> Progress note dated October 16, 2006 from Rebecca Ganzow, PAC indicated that the claimant was doing a lot of lifting and his arthritis was acting up. The claimant indicated that all he normally took was aspirin but [it] was not working well for him. Examination revealed no acute distress and there was some swelling in the bilateral proximal hand joints, otherwise no deformities or crepitus. Elbows were within normal limits and neurological exam was normal (Exhibit 17F, page 6) [A.R. 274].

(A.R. 20). The ALJ noted that plaintiff's blood sugars ran well most of the time and that plaintiff's blood pressure was under control when he took his medication. (A.R. 21). The ALJ did not address plaintiff's postural or environmental restrictions and he made no mention of plaintiff's difficulty hearing. Plaintiff's weight was generally in the 220-pound range, and he is only 65 inches tall. (A.R. 270-71, 278-79, 319-20). The ALJ's opinion never mentioned plaintiff's weight and height

and he failed to address functional restrictions related to plaintiff's obesity. The ALJ had grounds in the record for concluding that Physician's Assistant Ganzow had strayed into the area of advocacy on plaintiff's behalf (A.R. 262), but the ALJ did not identify any basis for making a similar finding with regard to Dr. Tracy. Further, the ALJ's strained reading of Ganzow's October 16, 2006 progress note (A.R. 274) cannot withstand scrutiny. Ganzow observed that plaintiff's arthritis in his hands had flared up after he did "a lot" of lifting. Ganzow did not identify what weight had been involved. Her statement does not support the ALJ's conclusion that plaintiff was able to lift and carry up to fifty pounds occasionally or twenty-five pounds frequently.

The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner and a treating physician's opinion that a patient is disabled is not "giv[en] any special significance." 20 C.F.R. §§ 404.1527(e); 416.927(e); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Deaton v. Commissioner*, 315 F. App'x 595, 598 (6th Cir. 2009). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirement of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e); 416.927(e); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009); *Deaton*, 315 F. App'x at 598; *Warner*, 375 F.3d at 390.

It is the ALJ's job to resolve conflicting medical evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971); *Mitchell v. Commissioner*, No. 08-6244, 2009 WL 1531879, at * 3 (6th Cir. June 2, 2009); *Martin v. Commissioner*, 170 F. App'x 369, 373 (6th Cir. 2006). Judicial review of the Commissioner's final administrative decision does not encompass resolving

such conflicts. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) *Walters v. Commissioner*, 127 F.3d at 528; *see Price v. Commissioner*, No. 08-4210, 2009 WL 2514079, at * 2 (6th Cir. Aug. 19, 2009). The treatment relationship is one of the factors that the ALJ considers in determining what weight to give a medical opinion. Generally, more weight is given to the medical opinions of treating sources. 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). If the ALJ finds that the treating source's opinion on the issues of the nature and severity of the claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case, the social security regulations specify that the ALJ is to give the medical opinion controlling weight. *Id.*; *see McGrew v. Commissioner*, No. 08-4561, 2009 WL 2514081, at * 3 (6th Cir. Aug. 19, 2009); *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009); *White v. Commissioner*, 572 F.3d 272, 285-86 (6th Cir. 2009). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2); *see Cox v. Commissioner*, 295 F. App'x 27, 35 (6th Cir. 2008) ("This court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another, where, as here, the ALJ's opinion is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record."). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton*, 246 F.3d at 773; *see Kidd v. Commissioner*, 283 F. App'x 336, 340 (6th Cir. 2008). An opinion that is based on the claimant's reporting of her symptoms is not entitled to any particular weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Mitchell v.*

*Commissioner*, 2009 WL 1531879, at * 5-6; *Smith v. Commissioner*, 482 F.3d 873, 876-77 (6th Cir. 2007).

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(d), 416.927(d); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006); *see also Anthony v. Astrue*, 266 F. App'x 451, 458-59 (6th Cir. 2008).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d at 875-76; *see Allen v. Commissioner*, 561 F.3d 646, 651 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "The procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deem them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876. I find that the ALJ did not comply with the procedural requirement of explaining the weight he gave to Dr. Tracy's opinions regarding plaintiff's functional restrictions. The ALJ made some general comments concerning the tendency of some doctors to become advocates for their patients, but provided no analysis of Dr. Tracey's opinions or reason to believe that this particular prognosis represented advocacy and not a reasoned medical opinion.

**Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be vacated and that the matter be remanded to the Commissioner for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

Dated: September 1, 2009  /s/ Joseph G. Scoville
United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).